GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By:  DAVID W. DENTON, JR.
     BENET J. KEARNEY
     Assistant U.S. Attorneys
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2744/2260

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X
                                        :    **VERIFIED COMPLAINT**
  UNITED STATES OF AMERICA,                   **FOR FORFEITURE**
                                        :
                  Plaintiff,            :    19 Civ.
                                        :
        - v. -                          :
                                        :
  THE BULK CARGO CARRIER KNOWN AS THE
  "WISE HONEST," BEARING INTERNATIONAL  :
  MARITIME ORGANIZATION NUMBER 8905490,
                                        :
                  Defendant-in-rem.     :
                                        :
- - - - - - - - - - - - - - - - - - - - X

        Plaintiff United States of America, by its attorney,

Geoffrey S. Berman, United States Attorney for the Southern

District of New York, for its verified complaint alleges, upon

information and belief, as follows:

## I.  NATURE OF THE ACTION

        1.    This is an action by the United States of America

seeking forfeiture of the bulk cargo carrier known as the "Wise

Honest," bearing International Maritime Organization ("IMO")

1

number 8905490 (the "Wise Honest" or "M/V Wise Honest"). A photograph of M/V Wise Honest is attached hereto as Exhibit A.

2.    The Wise Honest is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701 et seq. The Wise Honest is also subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in money laundering transactions, in violation of 18 U.S.C. § 1956, and as property traceable to such property.

## II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

4.    Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

## III.    THE NORTH KOREA SANCTIONS REGIME

5.    This civil forfeiture action relates to violations of regulations and Executive Orders issued pursuant to IEEPA. Enacted in 1977, IEEPA gives the President certain powers, defined in 50 U.S.C. § 1702, to deal with any threats with respect to which the President has declared a national

emergency, and prescribes criminal penalties for violations.
Pursuant to that authority, and as directed by the North Korea
Sanctions and Policy Enhancement Act of 2016 ("NKSPEA"),
codified at 22 U.S.C. § 9201 et seq., the President and the
executive branch have issued a series of orders and regulations
governing and prohibiting certain transactions relating to the
Democratic People's Republic of Korea ("DPRK" or "North Korea"),
including regulations implementing United Nations Security
Council Resolutions ("UNSCR") and prohibiting transactions by
U.S. persons, involving U.S.-origin goods, or using the U.S.
financial system (collectively the "North Korea Sanctions").

### A.   Executive Orders Pursuant to IEEPA

6.   On June 28, 2005, the President issued Executive
Order 13382 ("Blocking Property of Weapons of Mass Destruction
Proliferators and Their Supporters") to target proliferators of
weapons of mass destruction ("WMD") and their support networks
and deny designated proliferators access to the U.S. financial
and commercial systems.  Executive Order 13382 authorized the
United States Secretary of the Treasury, in consultation with
the Secretary of State, "to take such actions, including the
promulgation of rules and regulations, . . . as may be necessary
to carry out the purposes" of the Executive Order.  Pursuant to
that authority, on April 13, 2009, the Secretary of the Treasury

promulgated the Weapons of Mass Destruction Proliferators
Sanctions Regulations ("WMDPSR"), 31 C.F.R. § 544.101 et seq.

    7.    Among other things, Executive Order 13382 and the
WMDPSR:

    a.    authorized the Department of the Treasury,
Office of Foreign Assets Control ("OFAC") to sanction
individuals and entities facilitating the proliferation of WMDs
by placing such individuals or entities on the Specially
Designated Nationals List ("SDN List"), id. § 544.201(a);

    b.    prohibited transactions or dealings, except
as authorized or licensed by OFAC, by any U.S. person or within
the United States with individuals and entities who have been
placed on the SDN List, including (i) "[t]he making of any
contribution or provision of funds, goods, or services by, to,
or for the benefit of any person [on the SDN List]"; and (ii)
"[t]he receipt of any contribution or provision of funds, goods,
or services from any person [on the SDN list]," id.
§ 544.201(b); and

    c.    prohibited any transaction by a U.S. person
or within the United States that evades or avoids, has the
purpose of evading or avoiding, or attempts to violate any of
the prohibitions set forth in Executive Order 13382 and the
WMDPSR, id. § 544.205.

8.    In 2008, 2010, and 2011, the President issued a series of three Executive Orders regulating transactions with North Korea pursuant to his authorities under IEEPA.  See Executive Orders 13466 (June 26, 2008); 13551 (Aug. 30, 2010); 13570 (Apr. 18, 2011).  To implement Executive Orders 13466, 13551, and 13570, OFAC issued the North Korea Sanctions Regulations ("NKSR"), 31 C.F.R. Part 510.[1]

9.    On February 18, 2016, the President signed the North Korea Sanctions and Policy Enhancement Act of 2016 ("NKSPEA"), codified at 22 U.S.C. § 9201 et seq., to address the North Korean WMD threat.

10.    The NKSPEA states that the President "shall designate" as an SDN any person who "knowingly, directly or indirectly, engages in money laundering . . . that supports the Government of North Korea or any senior official or person acting for or on behalf of that Government," 22 U.S.C. § 9214(a)(6); or

> knowingly, directly or indirectly, sells, supplies, or transfers to or from the Government of North Korea or any person acting for or on behalf of that Government, a significant amount of precious metal,

---

[1] On March 5, 2018, OFAC amended the NKSR and reissued them in their entirety to implement Executive Orders 13687, 13722, 13810, discussed in paragraphs 12-13, infra, and to reference the NKSPEA, discussed in paragraphs 9-11, infra.  See Federal Register, Vol. 83, No. 43 (March 5, 2018).

> graphite, raw or semi-finished metals or
> aluminum, steel, coal, or software, for use
> by . . . the Korean Workers' Party.

Id. § 9214(a)(8). Within the NKSPEA, Congress found that "[t]he
Government of North Korea has been implicated repeatedly in
money laundering . . . ." Id. § 9201(a)(3).

      11.   The NKSPEA also directs the President to block
property belonging to the North Korean government, the Korean
Workers' Party, or a person acting on their behalf, if it comes
under U.S. jurisdiction.

      12.   Together with the enactment of the NKSPEA, the
President issued another series of three executive orders --
Executive Orders 13687, 13722, and 13810 -- further regulating
transactions with North Korea pursuant to his authorities under
IEEPA.  See Executive Orders 13687 (Jan. 2, 2015); 13722 (Mar.
18, 2016); 13810 (Sept. 21, 2017).

      13.   On March 15, 2016, the President issued Executive
Order 13722 ("Blocking Property of the Government of North Korea
and the Workers' Party of Korea, and Prohibiting Certain
Transactions with Respect to North Korea") to address "North
Korea's continuing pursuit of its nuclear and missile programs."
Executive Order 13722, which was subsequently codified at 31
C.F.R. § 510.206, expressly prohibits (footnote added)

the exportation or reexportation, direct or indirect, from the United States, or by a United States person, wherever located, of any goods, services, or technology to North Korea;[2]

new investment in North Korea by a United States person, wherever located; and

any approval, financing, facilitation, or guarantee by a United States person, wherever located, of a transaction by a foreign person where the transaction by that foreign person would be prohibited by this section if performed by a United States person or within the United States.

**B.   United Nations Security Council Resolutions**

14.   The United Nations Security Council has similarly prohibited the provision of goods, technology, and services to North Korea.  On or about October 14, 2006, the United Nations Security Council (the "Security Council") adopted United Nations Security Council Resolution ("UNSCR") 1718, which prohibited the supply, sale, or transfer to North Korea of various materials, equipment, goods, and technology.  Subsequently, on or about March 2, 2016, the United Nations Security Council adopted UNSCR 2270, which prohibited the sale, supply, or transfer of coal from North Korea.  Specifically, UNSCR 2270

---

[2] Pursuant to 31 C.F.R. § 510.405(a), this prohibition on the exportation and reexportation of goods, services, and technology "applies to services performed on behalf of a person in North Korea or the Government of North Korea or where the benefit of such services is otherwise received in North Korea."

7

> decide[d] that the DPRK shall not supply,
> sell or transfer, directly indirectly, from
> its territory or by its nationals or using
> its flag vessels or aircraft, coal, iron,
> and iron ore, and that all States shall
> prohibit the procurement of such material
> from the DPRK by their nationals, or using
> their flag vessels or aircraft, and whether
> or not originating in the territory of the
> DPRK.[3]

15.   UNSCR 2397, adopted by the Security Council on December 23, 2017, acknowledged "that the proceeds of the DPRK's trade in sectoral goods, including but not limited to coal . . . contribute to the DPRK's nuclear weapons and ballistic missile programs", and noted that, "the DPRK is illicitly exporting coal and other prohibited items through deceptive maritime practices . . . ."

## IV.   PROBABLE CAUSE FOR FORFEITURE

### A.   Overview

16.   This civil forfeiture action arises from a scheme to unlawfully access the U.S. financial system to support illicit shipments to and from North Korea.   The scheme was

---

[3] While UNSCR 2270 initially provided an exception for sales of coal "exclusively for livelihood purposes and unrelated to generating revenue for the DPRK's nuclear or ballistic missile programs or other activities" prohibited by applicable UNSCRs, on or about August 5, 2017, the United Nations Security Council adopted UNSCR 2371, which eliminated that so-called "livelihood exception" from UNSCR 2270, and prohibited all sale, supply, or transfer of coal from North Korea.

orchestrated by Korea Songi General Trading Corporation, a/k/a "Songi Trading Company," a/k/a "Korea Songi Trading Company," and implemented by its affiliate, Korea Songi Shipping Company, one of its representatives, Kwon Chol Nam ("Kwon"), and other entities (the "Korea Songi Scheme").

17.   On or about June 1, 2017, OFAC designated "Songi Trading Company" "pursuant to section 2(a)(ii) of E.O. 13722 for having sold, supplied, or transferred coal from North Korea, where any revenue or goods received may benefit the Government of North Korea." According to OFAC, "Songi Trading Company . . . is subordinate to the KPA [Korean People's Army] and involved in exporting North Korean coal."

18.   The Korea Songi Scheme allowed North Korean companies to export raw natural resources, notably coal, which provide a critical source of revenue for DPRK-based companies and for the North Korean government. Through shipments coordinated by Kwon, large quantities of coal were exported from North Korea, including on behalf of Korea Songi Trading Corporation, in violation of United Nations Security Council prohibitions on that exportation, and in a manner designed to avoid the imposition of sanctions on the entities involved by the United States. In return, large shipments of heavy

machinery were returned to North Korea using the same vessels, for delivery to Korea Songi General Trading Corporation.

19. One of the principal vessels used in the Korea Songi Scheme was M/V Wise Honest, the Defendant in Rem. That ship is owned by Korea Songi Shipping Company, and Kwon directly managed its operations. As described more fully below, M/V Wise Honest would typically carry coal out of North Korea to purchasers located abroad. After offloading the coal, M/V Wise Honest would return to North Korea carrying shipments of machinery.

20. While M/V Wise Honest was outside of North Korea, Kwon would arrange payment, denominated in U.S. dollars, for various necessary services for M/V Wise Honest's operations. Those payments routed through correspondent banks located in the United States, including in the Southern District of New York, causing those banks to violate the prohibition on the export of financial services to or for the benefit of North Korea.

## B. Background on the Participants in the Korea Songi Scheme

21. M/V Wise Honest is the current vessel name for a 17,061-ton, single-hull, bulk carrier ship built in 1989. A "bulk carrier" is a type of vessel specifically designed to transport unpackaged bulk cargo, such as coal, ore, or cement,

10

in its cargo hold.  Every cargo vessel of at least 300 gross tons is assigned a unique reference number by the IMO.  Although a vessel's name can be changed by its owner, the IMO number remains connected to a ship's hull, even if ownership or the ship's flag state changes.  M/V Wise Honest is assigned IMO 8905490.  Commercially available databases of IMO-registered vessels also include photographs of M/V Wise Honest.

22.  A "flag state" is the jurisdiction under the laws of which the vessel is registered or licensed.  A merchant vessel must be registered, and can register in only one jurisdiction at a time.  On or about November 17, 2016, M/V Wise Honest was registered in North Korea and has not since been registered elsewhere.

23.  M/V Wise Honest is currently registered as being owned by Korea Songi Shipping Company, at No. 01 Chungsong 3-dong, Rakrang-guyok, Pyongyang, North Korea.  M/V Wise Honest is the only vessel nominally owned by Korea Songi Shipping Company. Kwon is listed as the "Point of Contact" for Korea Songi Shipping Company.

24.  Kwon maintains a profile on LinkedIn, which is a website that allows individuals to post information about their employment, professional credentials, and education.  Kwon's

11

profile lists him as a "shipowner," and lists his employer as "korea songi shipping."

25.   Materials obtained from a communications account associated with Kwon (the "Kwon Materials") demonstrate that, despite being registered to an affiliate, Korea Songi Shipping Company, the Wise Honest is in fact controlled by Korea Songi General Trading Corporation.   For example:

a.   Kwon sent and received a number of emails with attachments containing documents written on the letterhead of Korea Songi General Trading Corporation, which lists an email address for Korea Songi General Trading Corporation at a domain suffix associated with North Korea (the "Korea Songi Trading Email Address") and which includes the same street address as that listed for Korea Songi Shipping Company in commercial databases for the registry of M/V Wise Honest.

b.   On or about January 11, 2017, Kwon sent an email to another participant in the scheme ("CC-1"), attaching a "Certificate of Insurance or Other Financial Security In Respect of Civil Liability for Bunker Oil Pollution Damage."   The document was issued by the "Maritime Administration, DPR Korea." The document identifies the insured vessel as "Wise Honest," and provides M/V Wise Honest's IMO number.   According to this

12

document, the "registered owner" of M/V Wise Honest is "Wise Honest International Ltd.," at an address in Hong Kong.

        c.   On or about February 24, 2017, Kwon received an email from CC-1 with the subject line "wh transfer" -- a reference to the Wise Honest. Attached to that email was a letter, written on the letterhead of Korea Songi General Trading Corporation, and bearing a stamp from that company. The letter, which is in Chinese,[4] purports to "transfer the ownership" of M/V Wise Honest from "Wise Honest International Limited and Vast Win(Hong Kong) Limited" to Korea Songi General Trading Corporation. According to the letter from Korea Songi General Trading Corporation, "our company will assume all the problems arising from the above companies" once the transfer is complete.

### C.   The Use of M/V Wise Honest for the Illicit Shipment of Coal from North Korea

        26.   Korea Songi General Trading Corporation, Korea Songi Shipping Company, and Kwon have extensively used M/V Wise Honest in the illicit shipment of coal from North Korea. For example, the Kwon Materials demonstrate the following:

---

[4] The description of the letter's contents is based on a preliminary, draft English translation and summary of that text. Because this and other such translations and summaries referenced in this Complaint are partial and preliminary, they are subject to revision as more complete translations and additional information are obtained.

a.    On or about November 15, 2016, Kwon and CC-1 made arrangements to use the Wise Honest, manned by a crew of 24 DPRK nationals, to ship "26,393 M/T"[5] of "anthracite coal in bulk" from "Nam Pho Port of D.P.R.K." for discharge at "China Port" on behalf of "Korea Chon Buk Pyong General Trading Corporation."

b.    On or about December 19, 2016, Kwon and CC-1 made arrangements to use the Wise Honest, manned by a crew of 25 DPRK nationals, to ship "26,550 M/T" of "anthracite coal in bulk" from "Nam Pho Port of D.P.R.K." for discharge at "China Port" on behalf of "Korea Songi Trading Corporation," another name for Korea Songi General Trading Corporation.

c.    On or before March 14, 2017, "Korea Songi Trading Company," another name for Korea Songi General Trading Corporation, and another party entered into a contract regarding a shipment of coal on the Wise Honest.  Rather than shipping the coal directly from North Korea, however, the contract provided that, "the shipowner shall take the ship through one safe port in Russia," and that, instead of being prepared at or prior to the Wise Honest's departure from North Korea, cargo documents

---

[5] "M/T" is a commonly used abbreviation on bills of lading standing for "metric tons."

14

for the shipment would be prepared once the vessel arrived in Russia, and shipped onwards from there.

**D.   Machinery Shipments to North Korea**

27.   In addition to exporting coal from North Korea in violation of international sanctions, Korea Songi General Trading Corporation, Korea Songi Shipping Company, and Kwon, have also used M/V Wise Honest to ship heavy machinery to North Korea.  For example, the Kwon Materials demonstrate the following:

a.   On or about November 1, 2016, Kwon made arrangements to use M/V Wise Honest to ship a number of items of heavy machinery, including an "overflow ball mill," "pendulum feeder," two items described as a "down the hole drill," two items described as "cone crusher," as well as 412,584 kilograms of "steel plate," among other items,[6] from Yantai Port in Shandong, China to "Korea Songi General Trading Corporation" at "NAMPO PORT, D.P.R K."[7]  However, although the vessel involved in transporting the cargo was the North Korea-registered M/V Wise

---

[6] All of these items are consistent with the type of heavy machinery used in mineral-extraction operations, including coal mining and processing.

[7] Nampo is North Korea's principal seaport.

15

Honest, the nationality of the vessel was inaccurately listed on the cargo manifest as "Tanzania."

        b.    The receipt for this shipment of machinery called for payment in U.S. dollars, and instructed the recipient to "please debit it to ships account." Kwon also received several photographs showing the loading of heavy equipment onto M/V Wise Honest.

        c.    On or about January 25, 2017, Kwon, CC-1, and another participant in the scheme ("CC-2") made arrangements to use M/V Wise Honest to ship eight "off road dump truck," three "pkgs of spare parts," 30 tires, and "1 truck crane QY75K in 4 parts," weighing 43,000 kilograms, to "Korea Song I Trading Corporation," at "Nampo Port, D.P.R.K."

**E.    The Last Voyage of M/V Wise Honest**

        28.    The use of M/V Wise Honest to make illicit shipments of coal from North Korea has continued until the present.

        29.    On or about March 14, 2018, an Earth-observation satellite maintained by a corporate provider of various defense and aerospace products and services, took a high-resolution photograph (the "Photograph") of the location at 38° 43' 33" North latitude, and 125° 24' 27" East longitude, which is in North Korea. The Photograph, which is attached hereto as

Exhibit B, depicts a vessel, which bears several characteristics unique to M/V Wise Honest, tied up alongside a dock. The Photograph also depicts large quantities of what appears to be coal piled alongside the dock and in warehouses adjacent to it. There are also cranes and other equipment that appear consistent with what would be used to load coal into M/V Wise Honest. One of the cargo hatches of the Wise Honest is open, and appears to contain coal within the hold.

30. On or about April 2, 2018, Indonesian maritime authorities intercepted and detained M/V Wise Honest. The port where they detained M/V Wise Honest is approximately 2,800 miles south of Nampo, North Korea, where M/V Wise Honest was photographed on March 14, 2018. Accordingly, it appears that after taking on a load of coal in Nampo, North Korea on or about March 14, 2018, M/V Wise Honest sailed south with that cargo toward Indonesia.

31. On or about April 11, 2018, Kwon received an email from another individual. The body of the email read, "Attached please find Information of Detained vessel." Attached to the email was a letter addressed to Korea Songi Shipping Company stating that "M/V Wise Honest, owned by Korea Song I Shipping Co," had been detained by the Indonesian Ministry of Transportation "due to major deficiency" on April 6, 2018.

17

**F.    Evasive Conduct by M/V Wise Honest**

32.   The International Convention for the Safety of Life at Sea (SOLAS), a maritime treaty, requires vessels of greater than 300 gross tons engaged on international voyages to carry an automatic identification system ("AIS") capable of providing information about the ship to other ships and to coastal authorities automatically.  According to the IMO's website, SOLAS is "generally regarded as the most important of all international treaties concerning the safety of merchant ships."  That regulation requires that a ship's AIS be able to transmit the ship's identity, type, position, course, speed, navigational status, and other safety-related information automatically to appropriately equipped shore stations, other ships, and aircraft, as well as to receive automatically such information from similarly fitted ships.

33.   AIS signals are transmitted openly through radio signals, and are made available both through publicly available databases and to government agencies with responsibility for such matters.

34.   Continuous operation of AIS is a critical factor for safe ship operating, particularly for avoiding collisions with other vessels.  It is rare for a vessel engaged in legitimate transit to turn off the AIS system.  Accordingly, the

18

fact that a vessel has turned off its AIS transmissions is typically evidence of an attempt to avoid detection of the vessel's location, course, speed, or other navigational status.

35. As described above, between March 14, 2018 and April 11, 2018, M/V Wise Honest traveled from Nampo, North Korea, toward Indonesia. Despite having made at least that voyage, M/V Wise Honest has not broadcast an AIS signal since August 4, 2017.

36. Accordingly, it appears that M/V Wise Honest attempted to conceal information about its location, course, speed, or other navigational status while in the course of transporting coal from North Korea to Indonesia.

G. **The Arrest and Conviction of the Captain of M/V Wise Honest**

37. After M/V Wise Honest arrived in Indonesia, the captain of the vessel, a North Korean national, was charged with violations of Indonesian maritime laws. On or about November 22, 2018, the state court of Balikpapan convicted him of offenses related to improper documentation for M/V Wise Honest.

38. Among the documentation entered into evidence in that proceeding was a "bill of loading" for the cargo on board M/V Wise Honest dated March 16, 2018, and indicating that the

cargo was loaded at "Nahkoda, Russia."[8] That documentation was false; the cargo of coal on M/V Wise Honest was in fact loaded in Nampo, North Korea. See supra ¶ 29 & Ex. B.

### H. The Use of the U.S. Financial System to Pay for Improvements to and Expenses of M/V Wise Honest

39. In connection with Korea Songi Scheme, Kwon has paid for numerous improvements, equipment purchases, and service expenditures for M/V Wise Honest in U.S. dollars through U.S. financial institutions.

40. U.S.-dollar denominated wire transfers are typically cleared through banks in the United States, many of which are located in the Southern District of New York. The normal method for processing U.S. dollar payments is as follows: When a bank customer located outside the United States directs a payment denominated in U.S. dollars to a company in a third country, the customer's bank will debit its customer's account, then transmit the payment instruction to its correspondent U.S. bank. The correspondent U.S. bank will, in turn, debit the customer's bank's U.S.-dollar correspondent account with the U.S. bank, while simultaneously transmitting those U.S. dollars from the account at the U.S. bank to the recipient's bank's

---

[8] This appears to be a typographical error intending to refer to Nakhodka, Russia, a seaport located in northwest Russia approximately 115 miles from the Russia-North Korea border.

correspondent account.  Finally, the recipient's bank will credit its customer's account in the third country.  Such transfers constitute a provision of services by the U.S. correspondent bank to both the sender and recipient of the funds, and thus are prohibited by IEEPA and the North Korea Sanctions in the case of North Korean senders or recipients.

41.  The Kwon Materials show that Kwon, between at least November 2016 and January 2017, received numerous invoices relating to M/V Wise Honest for payment in U.S. dollars, for expenses such as "Port Disbursements" and equipment and supplies necessary to pilot and upkeep a vessel, such as "IAMSAR Vol.3,"[9] "first aid for life boat," "electric cable," "plazma [sic] nozzle," "fixed vhf,"[10] "cylinder liner," "piston," "binocular," and "controller of crane," among other items.

42.  On or about January 21, 2017, Kwon also received an email with the subject line "[Bank-1] U.S. dollar remittance line."[11]  The attachment, which is on the same letterhead as the

---

[9] IAMSAR is an acronym for International Aeronautical and Maritime Search and Rescue, which publishes a three-volume manual containing guidelines for coordination of search and rescue operations.

[10] VHF is an acronym for "very high frequency," which refers to a frequency for long-range radio communications commonly used in the maritime shipping industry.

[11] The subject line is written in Chinese, and the description of

invoices described in paragraph 41 above, instructs payment to be made through "Correspondent Bank: [Bank-1] USA, New York." It provides a "SWIFT" code,[12] which corresponds to an office of Bank-1 located in the Southern District of New York.

43. In connection with the March 2018 shipment of coal on board M/V Wise Honest from North Korea, see supra ¶¶ 28-30, payments totaling more than $750,000 were transmitted through the correspondent accounts of another U.S. financial institution ("Bank-2"), which was specifically listed as being located in "New York, USA."

44. Kwon and others were aware that their conduct was in violation of U.S. and international sanctions against North Korea, particularly those sanctions prohibiting use of the U.S. financial system to conduct transactions for the benefit of the DPRK. For example:

---

its contents is based on a preliminary, draft English translation and summary of that text. As noted above, this and other such translations are subject to revision. See supra note 4.

[12] A "SWIFT" Code is a unique numerical identifier assigned to a bank or a bank branch or office by the Society for Worldwide Interbank Financial Telecommunication. These codes provide a way for electronic messages used to route funds transfers to be sent to particular financial institutions or businesses.

22

       a.   On or about October 26, 2016, Kwon emailed an individual ("Individual-1") to request that Individual-1 conduct a "pre-purchase survey" of the vessel "mv oriental hero." The following day, Individual-1 emailed Kwon with an invoice, seeking payment in U.S. dollars, addressed to "Owner of Oriental Hero, VAST WIN(HONGKONG) LIMITED." Kwon responded to Individual-1, "We hereby confirm this amount and pls be advised that we can pay only in RMB."[13] When Individual-1 objected to payment in RMB, Kwon responded, "We will find someone who can arrange remittance in US dollars," and asked Individual-1 to provide a "USD bank account." On or about November 2, 2016, Kwon emailed Individual-1, stating, "We have remitted usd 4300 for survey fee yesterday."

       b.   On or about November 26, 2016, Kwon sent an email to CC-1. In that email, Kwon asked CC-1 to "nego with sellers to pay in RMB as it is very difficult for us to prepare in USD." Kwon also asked CC-1 to "check which flag and class are convenient for our korea crew to be onboard." In addition, Kwon asked CC-1 to "[p]ls drag some time as the UN will announce sanction against korea very soon which makes us difficult to find cgo." CC-1 responded that he would "use your absence as an

---

[13] "RMB" is a common abbreviation for renminbi, Chinese currency.

excuse to try to delay, I think when u come back, if there is a sanction, shall have already come out."

### I.    The Seizure of M/V Wise Honest

45.   On or about July 17, 2018, the Honorable Debra Freeman, United States Magistrate Judge, issued a warrant, pursuant to 18 U.S.C. § 981 authorizing the seizure of M/V Wise Honest.  Pursuant to that warrant, M/V Wise Honest is currently in the custody of the United States.

### V. CLAIMS FOR FORFEITURE

46.   The statutory provisions pursuant to which M/V Wise Honest is subject to seizure and forfeiture are described below.

### A.    Proceeds Traceable to Violations of IEEPA

47.   Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

48.   Under § 1956(c)(7), the term "specified unlawful activity" includes, among other things, violations of "section 206 (relating to penalties) of the International Emergency Economic Powers Act [50 U.S.C. § 1705]."  Section 1705 provides,

24

in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title."  50 U.S.C. § 1705(a).

49.  As set forth above, see supra paragraphs 39-44, the Korea Songi Scheme violated IEEPA and the North Korea Sanctions by willfully causing the transmission of U.S.-dollar payments through U.S. financial institutions to pay for the operations of M/V Wise Honest, including various improvement to the vessel.  Accordingly, M/V Wise Honest constitutes or was derived from proceeds traceable to violations of IEEPA, and is therefore subject to forfeiture pursuant to § 981(a)(1)(C).

**B.   Property Involved in International Promotion of Specified Unlawful Activity Money Laundering**

50.  Section 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of . . . section 1956 or 1957 of this title [relating to money laundering], or any property traceable to such property."

51.  Section 1956(a) provides criminal penalties for

(a)(2) [w]hoever transports, transmits, or
transfers, or attempts to transport,
transmit, or transfer a monetary instrument
or funds from a place in the United States
to or through a place outside the United
States or to a place in the United States

25

from or through a place outside the United States--

(A) with the intent to promote the carrying on of specified unlawful activity[.]

52.  As set forth above, violations of IEEPA constitute "specified unlawful activity" under § 1956.

53.  The Korea Songi Scheme also violated § 1956(a)(2)(A), by transmitting funds to and from the United States to promote the scheme to violate IEEPA and the North Korea Sanctions to pay for the operations of M/V Wise Honest, including various improvements to the vessel.  Accordingly, M/V Wise Honest constitutes property involved in money laundering transactions in violation of § 1956, and is therefore subject to forfeiture pursuant to § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of M/V Wise Honest and that all persons having an interest in M/V Wise Honest be cited to appear and show cause why the forfeiture should not be decreed, and that the Court decree forfeiture of M/V Wise Honest to the United States of America for disposition according to law and that the Court grant plaintiff such further relief as the Court may deem just and proper together with the costs and disbursements in this action.

Dated:    New York, New York
          May _7_, 2019

GEOFFREY S. BERMAN
United States Attorney for
Plaintiff United States of America

By: _____
    DAVID W. DENTON, JR.
    BENET J. KEARNEY
    Assistant United States Attorneys
    One St. Andrew's Plaza
    New York, New York 10007
    (212) 637-2744/2260

27

VERIFICATION

STATE OF NEW YORK            )
COUNTY OF NEW YORK           :
SOUTHERN DISTRICT OF NEW YORK )

KATELYN CARPENTER, being duly sworn, deposes and says

that she is a Special Agent with the Federal Bureau of

Investigation ("FBI"); that she has read the foregoing complaint

and knows the contents thereof, and that the same is true to the

best of her knowledge, information and belief.

The sources of deponent's information and the grounds

of her belief are her personal involvement in the investigation,

and conversations with and documents prepared by law enforcement

officers and others.

_____
KATELYN CARPENTER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
8 day of May, 2019

_____
Notary Public



EXHIBIT A



EXHIBIT B

